## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

COURTNEY GREEN,

               Plaintiff,

  v.

ANTONIO SANTIAGO, SCOTT ERFE,
PETER MURPHY, DEPUTY WARDEN J.
ZEGARZEWSKI, DEPUTY WARDEN G.
MUDANO, CAPTAIN D. WILLIAMS,
CAPTAIN DOUGHTORY, LIEUTENANT
CONGER, LIEUTENANT M.
PLUSZYNSKI, MICHELLE KING, and
VISITING COORDINATOR S. JUBINSKY,

           Defendants.

3:16-cv-1724(CSH)

**MAY 26, 2017**

## INITIAL REVIEW ORDER

HAIGHT, Senior District Judge:

      Plaintiff Courtney Green ("Green"), incarcerated in a Connecticut prison and appearing *pro se*, has filed a Complaint, containing a number of allegations which assert claims under 42 U.S.C. § 1983 against several state prison officials.

      The Defendants identified by the Complaint are Warden Antonio Santiago; Warden Scott Erfe; District Administrator Peter Murphy; Deputy Warden J. Zegarzewski; Deputy Warden G. Mudano; Captain D. Williams; Captain Doughtory; Lieutenant Conger; Lietenant M. Pluszynski; Administrative Remedies Coordinator Michelle King, and Visiting Coordinator S. Jubinsky.

      All Defendants are named in their individual and official capacities and were employed at Corrigan-Radgowski Correctional Institution ("Corrigan") where Green was incarcerated at the time

of the alleged events.

This Ruling begins with, and consists principally of, the Court's *sua sponte* review of Green's pleadings, a review mandated by the Prison Litigation Reform Act of 1996 (PLRA), 28 U.S.C. § 1915A.

## I. STANDARD OF REVIEW

28 U.S.C. § 1915A directs federal district courts to consider all prisoner civil complaints against governmental actors, and dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b)(1),(2).

A district court's *sua sponte* dismissal of a prisoner's complaint under § 1915A is reviewed *de novo* by the court of appeals. Where the district court has dismissed for failure to state a claim, the Second Circuit has said that "we accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. We must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (citations and internal quotation marks omitted).

At the district court level, the district judge's § 1915A review of whether a complaint "fails to state a claim upon which relief can be granted" is guided by the Federal Rules of Civil Procedure, as interpreted by Supreme Court and Second Circuit decisions whose principles have become familiar. A *pro se* complaint is adequately pleaded if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). The Court must accept as true all well-pleaded and non-conclusory factual matters alleged in a

complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that *pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). In *Larkin* the Second Circuit took care to say, in the § 1915A context: "We will not affirm the dismissal of a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him to relief." 318 F.3d at 139 (citation omitted). The Court will apply these standards in conducting its initial review of any claims asserted by Green. The Court begins with a recitation of the factual allegations contained in these pleadings.

## II. FACTUAL ALLEGATIONS

The factual allegations contained in Green's Complaint, filed on October 17, 2016, are recounted herein, recited in the light most favorable to Green. They describe Green's August 2014 transfer from Cheshire Correctional Institution ("CCI") to Corrigan, his subsequent exposure to Corrigan's visiting policies, and the chronology of his objections to these policies, including his formal administrative grievance.

### A. Green's History of Contact Visits at CCI

Green was confined at CCI for approximately four and one half years, prior to his August 2014 transfer to Corrigan. As of August 2014, Green had been "discipline report free" for five and one-half years, with no assaults on Department of Correction staff. Green had no gang affiliation,

no history of introducing contraband into a correctional facility, and posed no unusual safety concern to prison staff or fellow inmates.

While confined at CCI, Green was afforded contact visits with his family, in accordance with Connecticut Department of Correction Administrative Directive 10.6(6)L.1. Green was then, and remains today, in compliance with the provisions of that Directive regarding prisoner eligibility for contact visits.

## B. Initial Denial of Contact Visits at Corrigan

Following his transfer to Corrigan, in September 2014, Green received a visit from his spouse and child. This visit was non-contact, meaning that a glass partition separated Green from his visitors. Green expressed his displeasure with this arrangement to the visiting officer in charge. Green was told he would not be allowed contact visits, as Corrigan is a "non-contact facility." Green objected to the visiting officer's characterization of Corrigan as a "non-contact facility," telling the officer this could not be true, as two other inmates were receiving contact visits at the same time that such visits were denied to Green. The visiting officer replied that while the officer was not responsible for making the visiting rules, Green could write to Defendant Conger to get into the "M.A.C. group," as only M.A.C. group members were eligible to receive contact visits at Corrigan. The visiting officer inquired into Green's disciplinary record, and, upon hearing that Green had not had a disciplinary report for five and one-half years, assured Green that there would be no difficulty in his obtaining contact visits.

## C. The M.A.C. Group

A few days after the visit described above, Green wrote to Defendant Conger, the M.A.C. group coordinator, to request enrollment in the M.A.C. group, via inmate request. Defendant

Conger never responded to Plaintiff's request in writing. However, while Defendant Conger was touring Green's housing unit, F-Pod, Defendant Conger notified Green in person that Green did not meet the requirements for M.A.C. group membership.

The requirements for membership in the M.A.C. group are as follows: (1) inmates must be "discipline free" for two years; and (2) inmates must have a minimum of twenty-five years remaining on their sentence at the time of their application to the group. Green met the first condition, by virtue of his clean disciplinary record. He did not meet the second condition; at the time of his application to the M.A.C. group, Green had less than twenty-five years remaining on his sentence. As Defendant Conger informed him, Green was therefore ineligible for membership in the M.A.C. group.

The M.A.C. group consists of fifteen inmates. Corrigan has a population of approximately 800 inmates, but of this population, the fifteen members of the M.A.C. group are the only inmates afforded contact visits. Defendant Williams served, at one time, as M.A.C. group coordinator. Defendant Pluszynski is the M.A.C. group contact visit/high security coordinator. Defendant Jubinsky is Visiting Coordinator, and as such "signed off" on the M.A.C. group policies. Defendant Doughtory is the Intel Captain of Corrigan, and also approved of the M.A.C. group policies. Defendant Zegarzewski, as Deputy Warden of Programs and Treatment, allowed the M.A.C. group to function under that authority. Defendant Mudano, as Deputy Warden, also gave approval to the M.A.C. group policies.

Other Level 4 correctional facilities in Connecticut, including CCI, Garner Correctional Institution, and MacDougall Correctional Institution, allow contact visits for their general populations, as described by Administrative Directive 10.6(6)L.1. There is no M.A.C. group or

equivalent limitation on access to contact visits at the referenced institutions.

### D. **Green's Protests and Grievance**

In late September 2014, after receiving Defendant Conger's negative response to his application to join the M.A.C. group, Green wrote to Defendant Erfe in protest of Corrigan's contact visit policies. At the time this letter was sent, Green understood that Defendant Erfe was the warden of Corrigan. Green never received a response to this letter.

In January 2015, Green mentioned the lack of response to his letter to Defendant Erfe to Green's counselor, non-party Counselor Meigs. Counselor Meigs informed Green that Defendant Erfe was no longer the warden of Corrigan, and had not held that post for a few months. Counselor Meigs suggested that Green address his concerns to the new warden, Defendant Santiago.

On February 22, 2015,Green addressed an inmate request to Defendant Santiago, inquiring into the authority cited for Corrigan's failure to provide contact visits to its general population, while allowing contact visits for the fifteen members of the M.A.C. group. By the same inmate request, Green further requested a contact visit with Defendant Santiago.

On March 2, 2015, Green received a written response from Defendant Santiago. This response again denied Green's request for contact visits, without providing any additional rationale for this denial.

Green then filed an administrative remedy (grievance) to protest the repeated denial of his requests for contact visits.

Defendant King denied Green's grievance. Defendant King cited the permissive language of Administrative Directive 10.6, which states that Level 2, 3, and 4 facilities *may* provide for contact visits (emphasis added). Defendant King instructed Green to contact nonparty Counselor

Supervisor Cruz, to request placement on the transfer list, and to contact Defendant Conger to see whether Green would meet the criteria of the M.A.C. group.

Green contacted Counselor Supervisor Cruz, and was denied a facility transfer. Green did not contact Defendant Conger at this time, as Defendant Conger had already informed Green that he did not meet the criteria of the M.A.C. group.

Green appealed his grievance to Level 2, where the denial was upheld by Defendant Murphy, on the same basis as the initial denial by Defendant King. Defendant Murphy informed Green that the Level 2 review exhausted Green's administrative remedies. Green believes Defendant Murphy's statement as to exhaustion to have been in error. Green believes he was entitled to appeal this denial to Level 3.

On November 11, 2015, Green wrote a letter to nonparty Connecticut Department of Correction Commissioner Scott Semple, informing Commissioner Semple that Corrigan was enforcing policies outside the scope of the Department's Administrative Directives. Specifically, Green informed the Commissioner of the "unwritten rule," that, at Corrigan, an inmate must be in the M.A.C. group to receive contact visits.

On or about December 4, 2015, Green received a memo from Defendant Santiago, in response to Plaintiff's November 2015 letter to Commissioner Semple. The memo stated that the M.A.C. group was not listed in the program compendium, and that the M.A.C. group was currently on hold and under review. To Green's knowledge, the M.A.C. group has never been listed and described on the Department's website or in the program compendium.

### E. Negative Health Impacts Associated with Green's Lack of Contact Visits

During his nineteen months at Corrigan, Green was diagnosed with elevated hypertension.

Green has also required mental health consultation for distress while at Corrigan. Green attributes both his elevated hypertension and his distress to his lack of access to contact visits while at Corrigan.

### III. DISCUSSION

Green contends that the Defendants have violated his Eighth and Fourteenth Amendment rights to freedom from cruel and unusual punishment, equal protection, and due process. Green also contends that the Defendants have violated the Eighth and Fourteenth Amendment rights to freedom from cruel and unusual punishment and equal protection of the general Corrigan inmate population. Additionally, Green contends that Defendants have not complied with various Administrative Directives of the Connecticut Department of Correction. Citations in the discussion below are to the Complaint's numbered paragraphs.

### A. <u>Claims on Behalf of Other Inmates</u>

Green includes general assertions on behalf of other inmates at Corrigan with regard to the contact visit policy. ¶ 29. Green lacks standing to bring claims on behalf of other inmates, unless he were to do so as part of a Rule 23 class action. Fed. R. of Civ. P. 23. One of Rule 23's requirements for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Green, as a *pro se* plaintiff, *in forma pauperis*, is ill-placed to represent a the interests of a class of fellow inmates. "A *pro se* plaintiff lacking any formal training in the law will not be permitted to represent a class." Am. Jur. 2d Fed. Courts § 1667. *See, e.g., Howard v. Pollard*, 814 F.3d 476 (7th Cir. 2015); *Ransom v. U.S. Postal Service*, 170 Fed. Appx. 525 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 373 (U.S. 2006); *Ziegler v. State of Michigan*, 90 Fed. Appx. 808 (6th Cir. 2004); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) (per

curiam); *Vazquez v. Fed. Bureau of Prisons,* 999 F. Supp. 2d 174, 177 (D.D.C. 2013) ("As a general rule applicable here, an individual appearing pro se may not represent other individuals in federal court, see 28 U.S.C. § 1654, and courts have routinely denied a prisoner's request to represent a class of prisoners without the assistance of counsel."); *DeBrew v. Atwood,* 847 F.Supp.2d 95, 104–05 (D.D.C.2012); *Maldonado v. Terhune*, 28 F.Supp.2d 284, 288 (D.N.J.1998); *Nilsson v. Coughlin,* 670 F. Supp. 1186, 1191 (S.D.N.Y. 1987). While, generally, *pro se* complaints are to be liberally construed, "the Court is reluctant to extend this type of procedural relaxation to the requirements of Rule 23(a)." *Jeffery v. Malcolm*, 353 F. Supp. 395 (S.D. N.Y. 1973).

Given the difficulty, if not impossibility, of a *pro se* plaintiff advancing a class action certification under Rule 23, as well as the general nature of Green's assertions on behalf of other inmates, any claims Green has asserted on behalf of other inmates are dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

## B. Sovereign Immunity for Official Capacity Claims

Green has named all Defendants in their individual and official capacities, but he seeks only money damages. The Eleventh Amendment divests the Court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *Id.* at 169 n.17; *see also Quern v. Jordan*, 440 U.S. 332, 341-45 (1979). Nor has Green alleged any facts suggesting that Connecticut has waived this immunity.

Accordingly, any and all claims against the Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b). *See Al-Bukhari v. Dep't of Corr.*, No. 3:16-cv-205,

2016 WL 730703, at *3 (D. Conn. Feb. 23, 2016) (slip copy) (dismissing claims against an individual in his official capacity based on sovereign immunity)

## C. § 1983 Claims Against Defendants in Their Individual Capacities

Green also asserts each of these claims against all Defendants in their individual capacities, again, seeking only monetary damages. Specifically, Green alleges that Defendants' denial of his various requests for contact visits violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment rights to due process and equal protection. Green further alleges a conspiracy amongst the Defendants to deprive Green of the aforementioned constitutional rights. The Complaint also claims that the Defendants' conduct violated certain administrative policies and directives of the State of Connecticut Department of Correction. The Court will address each of Green's claims in turn.

### 1. Under the Eighth Amendment

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

> In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious. *See Helling v. McKinney*, 509 U.S. 25, 35-36 (1993); *see also Rhodes*

*v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, the plaintiff must show that the defendants acted with "more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

While there may be some limitations on visitation that would violate a prisoner's rights under the Eighth Amendment, limitations much more severe than those described by Green have not cleared that bar. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (disciplinary regulation that subjected some inmates to ban of at least two years on *all* visitation, including non-contact visits, exclusive of clergy and attorneys, did not violate the Eighth Amendment, though some more permanent or arbitrary ban might); *see also Smith v. Coughlin*, 748 F.2d 783 (2d Cir. 1984) (no Eighth Amendment violation where inmate had been denied all contact visits, save those with priest, attorney, and medical professionals); *Marrero v. Weir*, No. 3:13-cv-0028, 2014 WL 4799228 (D. Conn. Sept. 26, 2014) (no Eighth Amendment violation where plaintiff's phone privileges and all visits from his mother were suspended indefinitely as a disciplinary measure).

Here, even liberally construed, Green's allegations are not sufficiently serious to state an Eighth Amendment claim. The Court does not doubt that Green was in fact distressed and discomfited by his lack of contact visits with his family. However, this district court is bound by the cited appellate authority holding that not every psychological discomfort a prisoner is forced to endure will amount to a constitutional violation. *See also Calhoun v. DeTella*, 219 F.3d 936, 939 (7th Cir. 2003). Considering the history of Eighth Amendment jurisprudence, Green's allegations that he was denied contact visits do not rise to the "wanton infliction of pain" that establishes a prison official's violation of the Eighth Amendment. *See Whitley*, 475 U.S. at 319. Thus, Green fails to state any cognizable Eighth Amendment claims. Green's § 1983 claims based on violations of the Eighth Amendment are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## 2. Under the Due Process Clause of the Fourteenth Amendment

Green alleges several Fourteenth Amendment procedural due process claims. To state a procedural due process claim, a plaintiff must allege that he has been "deprived of a protected liberty interest," without sufficient due process. *Batts v. Richards*, 4 F. Supp. 2d 96, 98 (D. Conn. 1998) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)). The Court will first consider whether Green was deprived of any protected liberty interest, before reaching the question of whether sufficient process accompanied any such deprivation.

### i. As to Visitation Rights

Green's primary procedural due process claim relates to the visitation policies he encountered upon his transfer from CCI to Corrigan. Having been afforded the opportunity for regular contact visits with his family while at CCI, Green was deprived of that opportunity upon his arrival at Corrigan, as first became evident to him during the September 2014 non-contact visit with his spouse and child. In the Complaint, Green specifically asserts that Defendant Santiago violated Green's Fourteenth Amendment rights to due process by "failing to give notice as to why plaintiffs [sic] privileges were revoked." ¶ 30. The first question in this due process inquiry, then, is whether Green had a protected liberty interest in contact visitation.

There is some support for an independent, fundamental constitutional right to visitation for inmates. This Circuit has held that pretrial detainees have a First Amendment right to contact visits. *Marcera v. Chinlund*, 595 F.2d 1231, (2d Cir. 1977), *vacated and remanded on other grounds*, 442 U.S. 915 (1979), acknowledged by *Bell v. Wolfish*, 441 U.S. 520, 559 n.40 (1979); *see also Rhem v. Malcolm (Rhem II)*, 527 F.2d 1041 (2d Cir. 1975); *Boudin v. Thomas,* 533 F.Supp.786, (S.D.N.Y. 1982), *appeal dismissed and remanded*, 697 F.2d 288 (2d Cir. 1982). All the cited opinions for the

existence of a constitutional right to visitation in this Circuit refer to the rights of pretrial detainees.[1]

Meanwhile, courts in this district have failed to find that inmates have any such independent, fundamental constitutional right to visitation, contact or otherwise. *See, e.g., Mercado v. Dep't of Corr.*, No. 3:16cv1622, 2017 WL 1095023 (D. Conn. Mar. 23, 2017) (Bryant, *J.*) (slip copy); *Mclellan v. Chapdelaine*, No. 3:16-cv-2032, 2017 WL 388804, at *6 (D. Conn. Jan. 27, 2017) (Bolden, *J.*) (slip copy) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)) ("[A] prisoner has no constitutionally protected right to contact or noncontact visits under the Due Process Clause of the Fourteenth Amendment."); *Graziani v. Murphy*, No. 3:11-cv-1615, 2012 WL 2785907 (D. Conn. July 5, 2012) (Chatigny, *J.*); *Calderon v. Lantz*, No. 3:06cv969, 2007 WL 2727149 (D. Conn. Sept. 18, 2007) (Underhill, *J.*); *Calderon v. Lantz,* No. 3:06cv61, 2006 WL 2092080, at *4 (D. Conn. July 24, 2006) (Dorsey, *J.*) (citing *Flanagan v. Shively*, 783 F.Supp. 922, 934 (M.D.Pa.), *aff'd*, 980 F.2d 722 (3d Cir.1992), *cert. denied*, 114 S.Ct. 95 (1993)) ("Inmates . . . have no constitutional right to visitation."). This Court is not convinced that Green can assert any independent, fundamental constitutional right to contact visits, sufficient to create a protected liberty interest.

---

[1] In a 2012 summary order, this Circuit affirmed a district court's dismissal of a 42 U.S.C. § 1983 complaint against New York prison officials, where the plaintiff-inmate had allegedly been denied an expected visit with his minor son. Considering the plaintiffs' assertion of a First Amendment constitutional right to visitation, and citing only to *Overton*, 539 U.S. at 131-32, the court noted, as dicta, that, "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, *could* rise to the level of a constitutional violation." *Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 1255 (2013) (summary order) (emphasis added). One judge in this district, finding that a parolee did not have a First Amendment right to visitation with his minor child, had the following comment on *Mills*: "while the Second Circuit recognized that the possibility of a constitutional violation could arise from the malicious deprivation of visitation to an inmate, it did not find that there was, specifically, a First Amendment right to such visitation." *Hoegemann v. Palma*, No. 3:16-cv-1460, 2017 WL 455930, at *8 (D. Conn. Feb. 2, 2017) (Bolden, *J.*).

Even if there is no independent constitutional right to visitation, "state law may create enforceable liberty interests in the prison setting." *Thompson*, 490 U.S. at 461. However, the ability of states to create an enforceable liberty interest is restricted to protections from restraints which "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This Circuit has consistently interpreted *Sandin* to mean that "a prisoner has a liberty interest only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation." *Tellier v. Fields,* 280 F.3d 69, 80 (2d Cir. 2000), citing *Sealy v. Gitner* 116 F.3d 47, 52 (2d Cir. 1997).

While it is doubtful that the deprivation of contact visits alleged by Green would rise to the standard of an "atypical and significant hardship," the Court need not reach this question, as the state of Connecticut has not created any liberty interest in contact visitation by either statute or regulation. In determining whether specific state prison regulations create a liberty interest, courts will look to whether the regulation, first, establishes "substantive predicates to govern official decision-making," and, second, mandates "the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson*, 490 U.S. at 462. While Connecticut Department of Correction Administrative Directive 10.6(6)L, "Contact/Non-Contact Visit," establishes substantive predicates to govern official decision-making as to which inmates will be afforded contact visits, *e.g.* by providing a (non-exclusive) list of characteristics which indicate that an inmate "presents a reasonable security concern," and should therefore be denied contact visits, the Directive explicitly provides that "[n]o inmate shall be entitled to a contact visit." State of Conn. Dep't of Corr., Admin. Directive 10.6(6)L (Oct. 10, 2013) available at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad1006.pdf (last accessed May 24, 2017); *see also Graziani,* 2012 WL 2785907, at *3 ("Under Connecticut law, visitation is viewed

as a privilege, not an entitlement."). As with the Kentucky prison visitation regulations at issue in

*Thompson,* here, in Connecticut,

> The overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions. Or, to state it differently, the regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials.

*Thompson,* 490 U.S. at 464-65.

Failing to find either an independent constitutional right to visitation, or a state-created liberty interest in contact visitation, the Court finds that Green has failed to state a claim that Defendants violated his Fourteenth Amendment right to due process by depriving him of contact visits. The § 1983 claims based on due process violations related to the deprivation of contact visitation privileges are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### ii. As to Grievance Procedures

Having addressed Green's due process claims as they relate to the denial of contact visits, the court now turns to Green's assertions that Defendants Murphy and King violated his right to procedural due process "by creating impediments and partiality within the grievance procedure." ¶¶ 31, 33. Specifically, Green asserts that Defendant Murphy told Green, in error, that Green's administrative remedies were exhausted after Defendant Murphy denied Green's Level 2 appeal.[2]

Prisoners have no constitutionally protected right to have prison officials comply with grievance procedures or even to respond to grievances. *See Torres v. McGrath*, No. 3:15cv1558, 2016 WL 1948806, at *4 (D. Conn. May 3, 2016) (slip copy) (quoting *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (collecting cases)) ("It is well established . . . that inmate

---

[2] This assertion is linked to Green's conspiracy claims, discussed further below.

grievances procedures are undertaken voluntarily by the state, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievance does not in itself give rise to a constitutional claim."); *Kalican v. Dzurenda*, No. 3:12-cv-1009, 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (no constitutional entitlement to have prison officials comply with grievance procedures or respond to grievances); *see also Fernandez v. Armstrong*, No. 3:02cv2252, 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.").

Because Green has no protected liberty interest in having correctional officials follow the state of Connecticut's established grievance procedure, and has not alleged that he was denied a constitutionally or federally protected right, there is no basis for a due process claim. The § 1983 claims based on due process violations related to the grievance procedures are therefore dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. Under the Equal Protection Clause of the Fourteenth Amendment

Green asserts two § 1983 claims based on the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). Green has alleged facts sufficient to state a claim of purposeful discrimination towards two identifiable classes of inmates: (1) those incarcerated at Corrigan, as opposed to those

-16-

incarcerated at CCI and other comparable Connecticut institutions; and (2) those with less than twenty-five years remaining on their sentences, as opposed to those with twenty-five years or more.

Where the differential treatment does not discriminate against a protected class, the government must meet only the lenient "rational basis" standard, whereby "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne* 473 U.S. at 440. The government must meet the higher "strict scrutiny" standard when it treats individuals differently based on a suspect or protected class, such as race or national origin. *Id.*

It is well-established that "[m]erely being a prisoner is insufficient to place [one] in a suspected class." *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010), *aff'd*, 449 F. App'x 51 (2d Cir. 2011) (summary order). Courts have applied rational basis analysis to equal protection claims where prison policies distinguished between non-suspect classes of prisoners. *See, e.g., McGinnis v. Royster*, 410 U.S. 263 (1973) (good-time policy distinguished between inmates held at county jails and those held at state prison); *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1735 (2010) (federal prison media-access policy distinguished between prisoners housed in special confinement unit, most of whom had been sentenced to death, and other prisoners); *Williams v. Manson*, 499 F.Supp. 773 (D. Conn. 1980) (mail policy distinguished between prisoners making lottery purchases and those making other financial transactions); *Delafonse v. Manson*, 385 F.Supp. 1115 (D. Conn. 1974) (prison pay policy distinguished between prisoners held at psychiatric hospital and those held at other hospitals); *Beatham v. Manson*, 369 F.Supp. 783 (D. Conn. 1973) (seniority pay-scale distinguished between

inmates of one correctional institution and those of another). As neither of Green's asserted classes of inmates has suspect or protected status, the less-stringent rational basis standard will apply.

The Complaint makes frequent reference to a violation of Green's right to equal protection under a theory of "legitimacy." It is not clear to the Court what significance or effect Green ascribes to this noun. In the equal protection context, legitimacy is the legal status of a child born to parents legally married to each other, as opposed to illegitimacy, the legal status of a child born outside a lawful marriage. *See Legitimacy* and *Illegitimacy,* Black's Law Dictionary (10th ed. 2014). Official discriminations between legitimate and illegitimate children face an intermediate level of scrutiny, between strict scrutiny and the rational basis standard, and "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest." *City of Cleburne,* 473 U.S. at 441 (quoting *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982). Green does not provide any factual basis for a claim that prisoners are discriminated against on the basis their status of legitimacy or illegitimacy, and his § 1983 claims based on equal protection violations as to the status of legitimacy are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Accordingly, Green's § 1983 claims against Defendants will go forward only on the two bases described above, namely (1) the differential treatment of inmates housed at Corrigan, as opposed to those housed at CCI or other comparable Connecticut institutions; and (2) the differential treatment of inmates with less than twenty-five years remaining on their sentences, as opposed to those inmates with twenty-five years or more remaining. As noted *supra*, the governing law requires Defendants to demonstrate that the protocols for contact visits at Corrigan are rationally related to a legitimate state interest. At this early stage, there is no evidentiary record on that issue, and the Court intimates no view with respect to it. Green makes particularized allegations that each named

Defendant shared responsibility for the discriminatory practices at Corrigan, and Green's equal protection claims, as described in this paragraph, will proceed against all named Defendants.

### 4. Under a Theory of Conspiracy to Violate § 1983

The Complaint makes two claims of conspiracy amongst the Defendants to violate Green's constitutional rights, in violation of § 1983. Green asserts that all Defendants "knowingly, intentionally, and recklessly" conspired to deprive him of his rights under the Eighth and Fourteenth Amendments. ¶ 41. Green also makes a more specific assertion that Defendant Murphy intentionally misled Green as to Green's appeal rights under the grievance system. Green asserts that Defendant Murphy's misrepresentation was in service of a conspiracy to uphold the prior negative determinations of Defendants Santiago and King as to Green's requests, without regard to the potential merit of Plaintiff's grievance. Green asserts that the aim of this alleged conspiracy is to satisfy the personal vendettas of corrections officials, at the expense of inmates' constitutional rights. To establish a conspiracy under § 1983, Green must prove "(1) the existence of an agreement between two or more state actors (or a state actor and a private entity), (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal." *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 268 (D. Conn. 2012) (quoting *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 218 (D. Conn. 2001)).

Both of Green's general conspiracy claims are barred by the intracorporate conspiracy doctrine, and thus, are futile. "[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted). "The intracorporate conspiracy doctrine applies to claims of § 1983 conspiracy." *Dilworth v. Goldberg*, 914 F. Supp.

2d 433, 467 (S.D.N.Y. 2012). Even though "the Second Circuit Court of Appeals has not issued a decision specifically addressing the use of the intracorporate conspiracy doctrine in prisoner civil rights cases," courts "within the Second Circuit . . . have applied the doctrine to [such] claims." *Richard v. Dignean*, 126 F. Supp. 3d 334, 338-39 (W.D.N.Y. 2015) (collecting cases).

There is an exception to the application of the doctrine when the individuals are "pursuing personal interests wholly separate and apart from the entity," *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (quoting *Bond v. Bd. of Educ. of the City of New York*, No. 97 cv 1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999)). For the exception to apply, a plaintiff "must also allege that [the defendants] acted other than in the normal course of corporate duties." *Id.* (quoting *Girard v. 94th St & Fifth Ave. Corp.*, 530 F.2d 55, 72 (2d Cir. 1976)).

That exception does not apply to this case. Green's Complaint alleges only that the prison officials have been acting in the normal course of their corporate duties. The general conspiracy claim asserts that Defendants conspired to deprive Green of his constitutional rights, but this does not articulate a personal interest "wholly separate and apart" from the interests of the government entity they serve. *Ali*, 136 F. Supp. 3d at 282. With regards to the specific claim of conspiracy against Defendants Murphy, Santiago, and King, Green does allege that "personal vendettas" played into Defendants choices to deny grievances, but without any more specific allegation as to what this personal interest or vendetta was, the Court cannot conclude that the exception would apply. Defendants were acting in the course of their duties by addressing the grievances and no interest "wholly separate and apart" from those duties justified their actions. All of Green's conspiracy claims against Defendants are therefore dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

### 5. Violation of Administrative Directives

Green also makes independent assertions that all eleven Defendants failed to comply with Administrative Directives, citing the directives and the failure to comply. The failure to comply with state-created procedures does not in and of itself create a protected liberty interest that would implicate due process rights. *See Fernandez*, 2005 WL 733664, at *10 (citing *Sandin*, 515 U.S. at 483) ("The Supreme Court has held that mandatory language in a prison directive or regulation does not in and of itself create a liberty interest"). All of Green's claims against Defendants for failure to comply with Administrative Directives are therefore dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

For the reasons set forth above, Green's Complaint [Doc. 1] is DISMISSED, pursuant to 28 U.S. § 1915A(b), to the extent it seeks to plead any claim on behalf of other inmates; any claim against Defendants in their official capacities; any claim of violation of Administrative Directives; any § 1983 claims based on violations of rights established by the Eighth Amendment or the due process clause of the Fourteenth Amendment; and any claims of criminal conspiracy.

Green's § 1983 claims based on alleged Fourteenth Amendment equal protection violations occurring as a result of (1) the differential treatment of Corrigan prisoners as opposed to similarly situated prisoners at CCI and other Connecticut facilities; and (2) the differential treatment of Corrigan inmates with less than twenty-five years remaining on their sentences, as opposed to similarly situated inmates with twenty-five years or more on their sentences, will proceed against all Defendants in their individual capacities.

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The Clerk shall verify the current work address of Defendants Antonio Santiago;

Scott Erfe; Peter Murphy; Deputy Warden J. Zegarzewski; Deputy Warden G. Mudano; Captain D. Williams; Captain Doughtory; Lieutenant Conger; Lietenant M. Pluszynski; Michelle King, and Visiting Coordinator S. Jubinsky with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the Court the status of that waiver request on the **thirty-fifth (35th) day** after mailing. If any Defendant fails to return the waiver request, then the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     The Clerk shall send a courtesy copy of the complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(3)     Defendants shall file their response to the Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the

response is not timely, the dispositive motion can be granted absent objection.




      **It is SO ORDERED.**

      **Dated: New Haven, Connecticut**
            **May 26, 2017**




                  ___*[Charles S.Haight, Jr.*_____
                   **Charles S. Haight, Jr.**
                 **Senior United States District Judge**